(60 South. 1025.)

No. 19,286.

STATE ex rel. PARISH OF OUACHITA BOARD OF SCHOOL DIRECTORS v. CITY OF MONROE et al.

(Jan. 20, 1913. Rehearing Denied Feb. 17, 1913.)

*(Syllabus by Editorial Staff.)*

1. SCHOOLS AND SCHOOL DISTRICTS (§ 19*)— TAXES—STATUTES.

A city which is supporting a school of its own cannot escape turning over a portion of its *tax collected to the parish school board, in com-pliance with Act No. 257 of 1910,* requiring municipalities to turn over a certain portion of its taxes to the parish school board, even if it has to discontinue its school on account of being limited to levying a 10-mill tax.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. §§ 34–37; Dec. Dig. § 19.*]

2. SCHOOLS AND SCHOOL DISTRICTS (§ 19*)— NATURE—TAXATION—CONSTITUTIONAL LAW.

Act No. 257 of 1910, adopted as an amendment to the Constitution, requiring certain municipalities to pay a certain portion of their taxes to the parish school board, must be complied with, even if it destroys it as a municipal corporation on account of its liabilities requiring all of the 10 mills that it is empowered to tax.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. §§ 34–37; Dec. Dig. § 19.*]

3. CONSTITUTIONAL LAW (§ 42*)—IMPAIRING THE OBLIGATION OF A CONTRACT—WHO CAN OBJECT.

A city cannot raise the objection that an act impairs the obligation of its contracts, but only the creditors whose contracts were being impaired.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 39, 40; Dec. Dig. § 42.*]

Appeal from Sixth Judicial District Court, Parish of Ouachita; J. P. Madison, Judge.

Mandamus by the State, on the relation of the Parish of Ouachita Board of School Directors, to compel the City of Monroe and others to turn over certain taxes. From a judgment granting the writ, the defendants appeal. Affirmed.

Stubbs, Russell & Theus, of Monroe, for appellants. Percy Sandel, of Monroe, for appellee.

PROVOSTY, J. Act No. 257, p. 437, of 1910, which has been adopted as an amendment to the Constitution, provides:

That the police juries of the several parishes and boards of trustees and municipal councils of incorporated cities and towns (the parish of Orleans excepted) shall levy, collect, and turn over to the parish school boards of their respective parishes, for the support of the public schools of their respective parishes, cities, or towns, the proceeds of at least three mills of the annual tax which they are empowered to levy on each dollar of the assessed valuation of the property thereof; provided, that cities and towns that are not exempted, and which are subject to the similar burdens of taxation as are the parishes, shall not pay this tax, as same is included in the taxes imposed by the parish in which the town is situated, "unless the parish boards of school directors of that parish certify that the needs of the schools can be met by a smaller levy of such taxes."

The city of Monroe is among the cities "exempted by the terms of their charter from the payment of parish taxes."

It refused to "levy, collect and turn over to the parish school board" (that of the parish of Ouachita, within which parish it is situated) "the proceeds of at least three mills of the annual tax which it is empowered to levy," and the present proceeding is a mandamus to compel it to do so.

[1] Its ground of refusal is that its power of taxation is limited to 10 mills, and that the whole of the avails of this 10-mill tax is absolutely needed to meet the regular forced expenses of the administration of its municipal government and the obligations of contracts entered into prior to the adoption of said constitutional amendment; and that therefore the effect of its turning over, as thus demanded, the avails of 3 mills of its said 10-mill tax would be to either impair the obligation of its said contracts, or else so cripple and block its municipal government as practically to destroy it.

These grounds are untenable in every way. The evidence shows that more than the amount thus demanded of the city of Monroe is used by it out of the avails of its 10-mill tax to maintain a public school of its own, so that the worst that could happen would be that this school would have to be discontinued. The maintenance of this public school by the city of Monroe is highly praiseworthy, but one must pay one's debts before being liberal; and hence the city of Monroe can continue to maintain this public school only if her means will allow her to do so, after having satisfied this debt imposed upon her by the Constitution.

[2] In the next place, if it were true that the municipality would be so hampered in the administration of its government that it would amount practically to destruction, the legal consequence would not be that the Constitution would not have to be obeyed, but that the city of Monroe would have to cease to exist as a municipality. The municipality is merely an instrumentality of gov-

ernment existing as matter of pure convenience, subject, of course, to be discontinued at any time, if the Constitution so provides, or, which is the same thing, if the carrying out of some imperative constitutional provision happens to have that effect.

Nothing contained in the decision of this court in the case of Wood v. Board of Liquidation, 40 La. Ann. 398, 4 South. 122, is in the slightest degree opposed to this. The statement made by Mr. Justice Fenner, in his concurring opinion at page 409 of 40 La. Ann., at page 129 of 4 South., that the Constitution did not contemplate the termination of the corporate existence of the city of New Orleans, but its continuation, is to be read in the connection in which it was made. When so considered, its meaning is that, by limiting the city's power of taxation to 10 mills, the Constitution did not intend to take away from the city whatever power of taxation, in addition to this 10 mills, was necessary to enable her to meet her contract debts created before the adoption of this constitutional limitation. This has no bearing upon the question of whether, if the Constitution had directed the city of New Orleans to attribute a certain proportion of its 10 mills tax to a particular purpose, it would not have had to be done.

[3] Finally, if the effect of obeying the said constitutional behest were to impair the obligation of the contracts of the city of Monroe, it would not be for the city of Monroe to raise that objection, but for those creditors whose contracts were being impaired. That point was expressly passed on by this court in the case of Moore v. New Orleans, 32 La. Ann. 726–745, where this court said:

"A law, unconstitutional because it impairs the obligation of a contract, is only null so far as the rights of those persons are concerned, the obligations of whose contracts are impaired. As to all other rights and all other persons, it is entitled to full force and effect. Only a person having a right and interest to invoke the unconstitutionality of a law as affecting himself, his property, and his rights can present such a defense. The complaint of the city of New Orleans here is, not that the provisions complained of in this statute invade or destroy any of her rights, but that they seek to relieve her from some of her obligations."

Judgment affirmed.